UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GARDEN CITY, INC., et al., | Case No.: CV 13-0577 PSG |
| Plaintiffs, | **ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS OR STRIKE PORTIONS OF THE COMPLAINT AND TO ABSTAIN OR STAY THE PROCEEDINGS.** |
| v. | |
| SAN JOSE, et. al., | |
| Defendants. | |
| | **(Re: Docket No. 17, 22, 25)** |

Defendants City of San Jose, et al., ("Defendants") move to dismiss or, in the alternative, strike allegations from the complaint filed by Plaintiffs Garden City, Inc., et al., ("Plaintiffs"). Defendants also move the court to abstain or, in the alternative, stay the proceedings. The parties appeared for oral argument. Having considered the papers and the arguments, the court GRANTS-IN-PART Defendants' request for a motion to dismiss, DENIES Defendants' motion to strike, and DENIES Defendants' motion to abstain or stay the proceedings.

## I. BACKGROUND

The Gaming Control Ordinance (Title 16 of the San Jose Municipal Code), enacted by the San Jose City Council on November 9, 1999, created the Division of Gaming Control ("the Division") within the San Jose Police Department. The Division of Gaming Control is charged

1
Case No.: CV 13-0577 PSG
ORDER

with carrying out licensing, permitting, revenue and tax auditing, regulatory compliance testing, regulation promulgation, and other administrative functions pursuant to the regulatory program outlined in the Ordinance. Except where otherwise noted, the court draws the following facts below, taken as true for the purposes of this motion to dismiss, from Plaintiffs' complaint.[1]

Casino M8trix is one of two cardrooms permitted for gambling in San Jose. It is the successor to Garden City, Inc., which originally owned the cardroom permit at issue here and which was bought by Eric Swallow, Peter Lunardi, and Jeanine Lunardi (the "Owners") in 2007. Following their purchase, the Owners moved Garden City to a new high-rise building near Minetta San Jose Airport and rechristened the operation as Casino M8trix. Business has since flourished.

The claims now before the court arose from Casino M8trix's move to its new home. The move was not an easy one and was not made any easier by Defendants' actions. According to Plaintiffs, despite their attempts to comply with the Division's requirements regulating the cardroom, as well as the city's general land use restrictions, the Administrator of the Division, Richard Teng ("Teng") and the remaining Defendants have treated them unfairly and unlawfully by: (1) delaying the licensure of key employees, (2) delaying their permit amendment to their cardroom permit, (3) conditioning the permit amendment on disclosure of its proprietary gaming systems, (4) recommending denial of Casino M8trix's plans for an eighth-floor gaming space, (5) requiring a live video feed despite the Division's lack of capability to receive the feed, and (6) causing excessive enforcement of parking and vehicular code regulations at the facility in an effort to inflate crime statistics.

Plaintiffs point to the ease with which Casino M8trix's only competitor, Bay 101, was able to obtain its gaming permits from the Division. Plaintiffs allege that Bay 101 obtained illegal and improper benefits from several former Division officers who had previously worked for Teng.

---

[1] *See* Docket No. 1.

2

Case No.: CV 13-0577 PSG
ORDER

On the basis of these allegations, Plaintiffs bring claims under 42 U.S.C. § 1983. First, Plaintiffs allege violations of their right to procedural and substantive due process. Second, Plaintiffs raise a so-called "class-of-one" equal protection claim.

In addition to their merits-based defenses, Defendants offer affirmative and procedural defenses that they believe mandate dismissal or at least a narrowing of this case. Defendants contend Plaintiffs' claims fall short on (1) standing, (2) res judicata, (3) statute of limitations, and (4) immunity grounds. Defendants also claim that Plaintiffs improperly seek punitive damages. Based on all this, Defendants move the court to dismiss the case in full or in part. In the alternative, Defendants seek to stay the action under the abstention doctrine set forth in *Younger*.[2] Defendants also move the court to strike allegations barred by the statute of limitations and res judicata.

## II. LEGAL STANDARDS

### A.   Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[3] If a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[4] A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[5] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant has acted unlawfully."[6] Accordingly, under Fed. R. Civ. P. 12(b)(6), which tests the legal sufficiency of the claims alleged in the complaint, dismissal "can be based on

---

[2] *Younger v. Harris*, 401 U.S. 37 (1971).

[3] Fed. R. Civ. P. 8(a)(2).

[4] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[6] *Id.* at 678.

3

Case No.: CV 13-0577 PSG
ORDER

the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[7]

On a motion to dismiss, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[8] The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice.[9] However, the court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.[10]

"Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment."[11]

### B. Motion to Strike

Upon motion or on its own, the court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter."[12] "This includes striking any party of the prayer for relief when the relief sought is not recoverable as a matter of law."[13] Rule 12(f) motions are designed "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those prior to trial."[14] Motions to strike are disfavored and "generally not granted unless it is clear that the matter sought to be stricken could have no possible bearing on

---

[7] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[8] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

[9] *See id.*

[10] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); s*ee also Twombly*, 550 U.S. at 561 ("a wholly conclusory statement" of a claim will not survive a motion to dismiss).

[11] *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

[12] Fed. R. Civ. P. 12(f).

[13] *Rosales v. Citibank, Fed. Sav. Bank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001).

[14] *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds*, 510 U.S. 517, 114 (1994).

4

Case No.: CV 13-0577 PSG
ORDER

the subject matter of the litigation."[15]  "Courts must view the pleading under attack in the light most favorable to the pleader, treating as admitted all material facts alleged and all reasonable presumptions that can be drawn therefrom."[16]

### III. DISCUSSION

**A.   Merits-Based Arguments**

    **1.   Procedural and Substantive Due Process**

The court begins with the sufficiency of Plaintiffs' procedural and substantive due process claim. "A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution."[17]  A plaintiff may establish a protected property interest "where an individual has a reasonable expectation of entitlement deriving from existing rules or understandings that stem from an independent source such as state law."[18]  A "reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms."[19]  "Although procedural requirements "ordinarily do not transform a unilateral expectation into a protected property interest," a property interest may be created if "the procedural requirements are intended to be a significant substantive restriction on . . . decision making." [20]

---

[15] *Rosales*, 133 F. Supp. 2d, at 1180.

[16] *Id.*

[17] *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir.1994) (internal quotations and citations omitted).

[18] *Id.*

[19] *Id.*

[20] *Id.*

5
Case No.: CV 13-0577 PSG
ORDER

Plaintiffs claim their property interests arise from their: (1) cardroom permit amendment applications,[21] (2) employee license applications and landowner license applications,[22] and (3) business goodwill.[23] Plaintiffs point to the imperative "shall" in the Gaming Ordinance and their right to a hearing to emphasize the limits upon Defendants' discretion.[24] Those limits, Plaintiffs argue, give rise to the property interests they claim. Defendants respond that a close read of the complaint reveals that, whatever general allegations they raise, Plaintiffs' due process claims arise solely from Defendants' failure to grant the cardroom permit amendment. Defendants therefore urge the court to consider only that allegation.

Defendants dispute that a cardroom permit constitutes a property interest to which Plaintiffs had a reasonable expectation of entitlement, highlighting the revocable nature of the cardroom permit. Defendants also point out that although the statutes require the chief to make certain

---

[21] See Docket No. 1 at ¶¶ 51, 88, and 95.

[22] Although the complaint references the Division's "unreasonable delay" in licensing employees, the complaint does not claim that Plaintiffs possess a property interest in the timely licensure of its employees.

[23] Docket No. 1 ¶ 91. Curiously, Plaintiffs' complaint does not incorporate ¶ 91 into its procedural and substantive cause of action under Section 1983. *Id.* at ¶ 92 ("Plaintiffs incorporate paragraphs 1 through 88, inclusive, by reference as though set forth in full.").

[24] Section 16.30.230(B) of the Gaming Ordinance provides:

The chief of police *shall permit* the amendment if the chief determines and finds that the proposed amendment will not:

(1) Have an adverse effect on public health, safety, or welfare; or
(2) Have an adverse effect on the ability of the administrator and the chief of police to effectively administer and enforce the requirements and policies of this title; or
(3) Result in the violation of any city, state, or federal law; or
(4) Be inconsistent with the policies, purposes, and provisions of this title or be contrary to the public interest.

*See also* San Jose Municipal Code Title 16, Section 16.110(C) (to "*the extent practicable*, the administrator of [the Division] *shall act* on all [license] applications within one hundred and eighty calendar days of the date of receipt of a completed application") (emphasis added). The court notes that the to "the extent practicable" language limits the persuasiveness of Plaintiffs' argument that this portion of Title 16 is made compulsory upon the administrator of the Division.

6

Case No.: CV 13-0577 PSG
ORDER

findings, they do not prescribe how the chief should arrive at his conclusions. Defendants conclude that there is no "significant substantive restriction" on the chief's discretion, and thus, no protectable property right is created by the procedural hearing afforded to gaming permit applicants.[25]

As an initial matter, the court agrees that the complaint focuses Plaintiffs' due process claim on the cardroom permit issue. And so there, too, will the court focus its analysis. The nub of Plaintiffs' due process claim centers on the degree to which the police chief and the division administrator have any discretion to withhold the permit amendment. In analyzing this discretion the court must focus on the language of Title 16. That language requires the chief to permit amendment of a gaming license unless the chief finds the proposed amendment will have one of four detrimental effects.[26] If the chief does not make such a finding, then the chief "shall permit" the requested amendment to the gaming license.[27] Because the chief is alleged to have never made one of those four findings based on an established factual record, the chief was required to issue the cardroom permit amendment. No discretion was permitted.

The same is true of the division administrator.[28] Casino M8trix submitted its permit amendment application on March 30, 2011. Under Title 16 Section 16.30.200(E) the administrator of the Division "shall file a public report" within a "reasonable time period" after receipt of the completed application for permit amendment.[29] Plaintiffs claim Administrator Teng delayed

---

[25] *Parks v. Watson*, 716 F.2d 646, 657 (9th Cir. 1983).

[26] *See supra* note 24.

[27] *Id.*

[28] Docket No. 1, ¶ 40.

[29] *Id.*

7

Case No.: CV 13-0577 PSG
ORDER

completion of a Permit Amendment Report for 16 months until July 20, 2012.[30] No matter the objective motive, the division administrator does not enjoy any subjective discretion

In sum, the court finds that Plaintiffs' complaint successfully pleads a claim for violation of their due process rights. Time will tell whether they can prevail but dismissal of Plaintiffs' first cause of action at the pleading stage is not warranted.

### 2.  Class-of-One Equal Protection

An "equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called class of one."[31] A class-of-one equal protection claim under the Due Process Clause of the Fourteenth Amendment lies where the plaintiff was (1) intentionally, (2) treated differently than others similarly-situated, and (3) there is no rational basis for the difference in treatment.[32]

#### a.  Intent

To make out a class-of-one claim, a plaintiff must first establish the defendant's intentional conduct. Here, Plaintiffs' complaint alleges a handful of instances where Casino M8trix received markedly worse treatment than Bay 101, including: (1) intentional delays in granting key employees licenses, (2) intentional obstruction of landowner license applications, (3) delayed eighth floor gaming, (4) burdensome security procedures, and (5) harassing policing. Plaintiffs' allegations of a larger pattern and practice of regulatory harassment is sufficient to plead the intent element of a class-of-one equal protection claim. In light of *Gerhart*, which explained that "a

---

[30] *Id.*

[31] *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (internal quotations and citations omitted).

[32] *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

8

Case No.: CV 13-0577 PSG
ORDER

continuous history of harassment" by government employees may be enough to satisfy the intent prong, the court finds that the Plaintiffs' complaint sufficiently pleads intent.[33]

### b. Differential Treatment Toward a Similarly-Situated Party

The second element of the class-of-one analysis considers whether Plaintiffs are similarly-situated to Bay 101. Courts "should enforce the similarly-situated requirement with particular strictness when the plaintiff invokes the class-of-one theory rather than the more settled cognizable-group theory."[34] Class-of-one plaintiffs "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves."[35] The Seventh Circuit has held that to "be considered similarly situated, the class of one challenger and his comparators must be prima facie identical in all relevant respects or directly comparable in all material respects."[36] Strict "enforcement of the similarly-situated requirement is a vital way of minimizing the risk that, unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision" made by state actors.[37]

Defendants argue that Plaintiffs and Bay 101 are not similarly-situated and thus differential treatment of the casinos cannot form the basis of a class-of-one claim. In particular, Defendants point out that Plaintiffs, unlike Bay 101, sought to carry out eighth-floor gaming. Moreover, even Plaintiffs concede that the two casinos did not seek all of the same permits and licenses. On balance, even taking the factual pleadings in the complaint as true, the court agrees with

---

[33] *Id.* at 1023.

[34] *JDC Mgmt., LLC v. Reich*, 644 F. Supp. 2d 905, 926 (W.D. Mich. 2009).

[35] *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006).

[36] *U.S. v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008).

[37] *Reich*, 644 F. Supp. 2d at 927.

9
Case No.: CV 13-0577 PSG
ORDER

Defendants that Plaintiffs' complaint fails to adequately plead that Plaintiffs and Bay-101 were similarly-situated.

This case is analogous to *Scocca v. Smith*, a recent case from this district.[38] *Scocca* considered an equal protection claim arising from a sheriff's denial of an individual's permit application to carry a permit to carry a concealed weapon. The court rejected the applicant, Mr. Scocca's, assertion that he was similarly-situated to favored third parties, because the criteria for granting the firearm permit "are subjective and qualitative" in nature.[39] The court noted that in "a class-of-one equal protection case, cursory allegations" that the parties are "similarly situated are especially problematic" where "inherently subjective and individualized enforcement of health and safety regulations" are at issue.[40] Because the permit amendment at issue in this case calls for similar individualized decision making, Plaintiffs cannot rely on conclusory allegations to plead the similarly situated element of a class-of-one cause of action.

### c.  Was There a Rational Basis for the Disparity in Treatment

Plaintiffs also must show that there was no rational basis for the detrimental treatment Plaintiffs suffered. The "rational basis prong of a 'class of one' claim turns on whether there is a rational basis for the *distinction*, rather than the underlying government *action*."[41] The key question is whether the state had a rational basis for Plaintiffs' for differential treatment. Here, Plaintiffs

---

[38] *Scocca v. Smith*, No. 3:11-cv-1318 EMC, 2012 WL 2375203, at *5 (N.D. Cal. June 22, 2012).

[39] *Id.*

[40] *Id.* (citing *Kansas Penn Gaming, LLC v. Collins*, No. 10-3002, 2011 WL 3849751 (10th Cir. Sept. 1, 2011); *see also Perano v. Township of Tilden*, 423 Fed. Appx. 234, 238–39 (3d Cir. 2011) (in class-of-one case, stating that allegation that plaintiff "was treated differently from 'other similarly situated residential and commercial developers'" was not enough; without "more specific factual allegations as to the allegedly similarly situated parties, he has not made plausible the conclusion that those parties exist and that they are like him in all relevant aspects").

[41] *Gerhart*, 637 F. 3d at 1023 (emphasis in original).

brief contains a bald allegation that "Defendants had no rational basis for their actions."[42] Bald allegations, however, are not enough to satisfy the pleading standard in a Rule 12(b)(6) motion.[43]

Because the complaint (1) does not sufficiently plead that Plaintiffs and Bay One are similarly-situated and (2) does not contain sufficient non-conclusory allegations that there was not a rational basis for Defendants' actions, dismissal is warranted on Plaintiffs' class-of-one equal protection claim.

**B.   Affirmative Defenses**

In addition to merits-based arguments, Defendants offer several affirmative defenses that they believe require dismissal.

**1.   Standing**

Standing is a threshold inquiry whose requirements are well-known. Standing requires an (1) injury in fact, (2) causally tied to defendants' actions, and (3) redressable by a favorable court decision.[44] The injury must be "concrete and particularized" as well as "actual or imminent, not conjectural or hypothetical."[45] A "core component" of constitutional standing requires a "plaintiff to allege *personal* injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."[46] Prudential standing doctrine requires that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."[47]

---

[42] Docket No. 1, ¶ 107.

[43] *See Iqbal*, 556 U.S. at 681.

[44] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

[45] *Id.* (internal quotations and citations omitted).

[46] *Allen v. Wright*, 468 U.S. 737, 751 (1984) (emphasis added).

[47] *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 474 (1982) (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

Here, the parties dispute whether two of the three plaintiffs, Airport Opportunity Fund, LLC ("Airport Fund") and Airport Parkway Two, LLC ("Airport Parkway"), have proper standing before the court. Garden City (dba Casino M8trix) is a California corporation controlled by the Owners. The Owners also own and control the Airport Fund which is the sole owner of Airport Parkway. Airport Parkway is the business entity used by the Owners to purchase the property where Casino M8trix is situated. Plaintiffs' complaint only explicitly and sufficiently pleads a single, narrow cause of action: Defendants failure to issue Casino M8trix's cardroom permit amendment violated Plaintiffs' right to due process. Defendants claim that because the landowner limited liability companies do not hold an interest in the cardroom permits, those companies do not have a sufficient stake in the outcome of the litigation to satisfy standing requirements.

The court finds the harm stemming from the delayed cardroom permit amendments and delayed licensing was, at most, tangential to Airport Fund and Airport Parkway. Airport Fund and Airport Parkways' interest in the cardroom permit amendment is not direct or personal. The complaint does not trace how Defendants failure to issue the cardroom permit amendment caused any injury to Airport Fund or Airport Parkway. Moreover, any financial remedy from this litigation would flow directly to Casino M8trix, not Airport Fund or Airport Parkway. In sum, Plaintiffs' complaint does not adequately allege sufficient personal injury suffered by Airport Fund or Airport Parkway to confer standing on those parties.

### 2. Res Judicata

Based on a 2012 state writ proceeding, Defendants argue that all of Plaintiffs' claims against Defendants are barred by res judicata. A federal court must give a state court judgment the same preclusive effect as would be given the judgment under the laws of the state in which the judgment was rendered.[48] Under California law, for res judicata to apply, three elements must be

---

[48] *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 80 (1984).

present: (1) a "claim or issue raised in the present action" must be "identical to a claim or issue litigated in a prior proceeding," (2) the prior proceeding must have "resulted in a final judgment on the merits," and (3) "the party against whom the doctrine is being asserted" must have been "in privity with a party to the prior proceeding."[49] California law distinguishes two kinds of res judicata: claim preclusion and issue preclusion. "Claim preclusion bars successive litigation of the same claim after a final judgment, even if the same issues on the claim were not raised in the first suit, while issue preclusion bars relitigation of an issue that actually was litigated, even if the claim is different."[50]

Here, Defendants assert claim preclusion.  According to Defendants, this action is the same as Plaintiffs' 2012 state court action seeking a writ of mandamus to force the Division to provide timely processing of their applications for landowner licensing and amendment to the gaming permit.  The state court denied the request.  Defendants assert that the issues here arise from the same set of factual circumstances as that case and so Plaintiffs should have raised them earlier. Plaintiffs respond that the issues actually litigated in the prior proceeding were different from the federal civil rights claims here and so res judicata does not apply. Plaintiffs also argue that even if certain factual allegations overlap, in this action, those allegations highlight a pattern and practice of violations of their due process rights.

The court turns to whether each of the three factors identified above is present.

### a. Identity of Claims

Under California law, claims are sufficiently identical if they deal with the same "primary right."[51]  For "the purposes of applying the doctrine of res judicata, the phrase 'cause of action' has

---

[49] *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 797 (2010).

[50] *Carollow v. Vericrest Financial Inc.*, Case No. 11-cv-4767 YGR, 2012 WL 4343816, at *4 (N.D. Cal. Sept. 21, 2012).

[51] *See Boeken*, 48 Cal. 4th at 798.

Case No.: CV 13-0577 PSG
ORDER

13

a more precise meaning: The cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced."[52]  In other words, two causes of action under California law generally consist of the same "primary right" when "the same parties seek compensation for the same harm."[53]

Defendants argue that in both lawsuits Plaintiffs have sought to have their applications for landowner licenses and cardroom permit amendments granted in a timely fashion.  Defendants claim Plaintiffs allege the same harm in both suits: an inability to provide gaming at the new location.  Defendants argue the alleged harm occurred at the same time, by the same acts, and by the same actors.  Defendants claim that the constitutional violations could have been asserted in the prior state court proceeding, but were not due to inartful drafting.  Nonetheless, Defendants claim that Plaintiffs "expressly alleged" the issues of due process and equal protection under the federal constitution in the earlier lawsuit.  Defendants cite *Palomar Mobilehome Park Ass'n v. City of San Marcos* for the proposition that litigants "cannot avoid the preclusive effect of res judicata by failing explicitly to plead federal constitutional violations in a prior state action."[54]  Thus, Defendants conclude that California law bars Plaintiffs' constitutional claims that could have been litigated in a prior California state proceeding.

Plaintiffs note that under California law, a final state court judgment, "precludes further proceedings if they are based on the same cause of action."[55]  Plaintiffs argue that different primary rights may be violated by the same wrongful conduct and therefore the focus should fall on the harm suffered.  Plaintiffs argue that even though their constitutional claims in this litigation arise

---

[52] *Id.*

[53] *Id.*

[54] 989 F.2d 362, 365 (9th Cir. 1993).

[55] *Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir. 2009) (citations omitted).

14
Case No.: CV 13-0577 PSG
ORDER

from some of the same transactions or occurrences, and thus some of the same facts underlying both suits, that alone is not dispositive. Plaintiffs identify a series of events that occurred after June 25, 2012, (the date of the state petition decision) to support their argument that later events ripened Plaintiffs' claims. Therefore, Plaintiffs allege, they could not have raised those claims earlier.

The court finds that the primary rights at issue in the current proceedings are markedly different from the primary right at issue in the California mandamus action. In the prior California action Plaintiffs sought mandamus relief to obtain their cardroom permit amendment and landowner license. Although the mandamus petition made passing reference to the parties' constitutional rights, Plaintiffs never brought constitutional claims.[56] The petition limited itself to mandamus relief to pave the way for Plaintiffs to legally open their new gaming facility. Plaintiffs' complaint in the current litigation seeks compensation for Defendants' ongoing violation of their constitutional rights. Thus, different primary rights are implicated by the two claims.

### b. Identity of Parties

Plaintiffs and Defendants agree that the parties were identical in both proceedings. Garden City, Airport Parkway, and Airport Opportunity were plaintiffs in the prior proceeding and brought the mandamus petition against the defendants in the current proceeding the City of San Jose, the San Jose Police Department, and Richard Teng.[57] Thus, this element of res judicata is satisfied.

### c. Final Judgment on the Merits

For res judicata to apply, the initial state court proceeding must have resulted in a final judgment on the merits. Defendants argue that the June 25, 2012, denial of a state petition for a writ of mandate constitutes a final judgment on the merits that precludes Plaintiffs' federal claim.

---

[56] *See* Docket 18, Ex. B-1.

[57] The court notes that Eric Swallow, Peter Lunardi III, and Jeanine Lunardi, the owners of Casino M8trix, were individually-named plaintiffs in the prior proceeding. The San Jose Police Department's Division of Gaming Control and San Jose Police Chief Christopher M. Moore also were named defendants in the prior proceeding.

15

Case No.: CV 13-0577 PSG
ORDER

Plaintiffs counter that recent Ninth Circuit precedent, *Honey v. Distelrath*, is controlling and excepts mandamus actions from precluding subsequent civil rights claims under Section 1983. The Ninth Circuit in *Honey* held that California mandamus actions do not result in res judicata and do not preclude federal civil rights claims under Section 1983.[58] Therefore, Plaintiffs argue, res judicata does not preclude Plaintiffs' subsequent Section 1983 claims in this case. In the alternative, Plaintiffs argue that if *Honey* is not dispositive, the preclusive effect of the prior proceeding should be limited in scope because the court relied on a limited evidentiary record and the court admitted that it "did not have the resources or experience to exercise its discretion to evaluate the approval process for licenses and gaming operations."[59]

In *Yaqub v. Salinas Valley Memorial Hospital* Judge Fogel squarely addressed the issue that faces the court today: whether *Honey* permits a Plaintiff to raise a civil rights claim following a mandamus state court action.[60] The court held that while *Honey* represented "a complete departure from prior Ninth Circuit and California precedent," it was still bound to "follow *Honey* as the Ninth Circuit's most recent decision on the issue at hand."[61] The court agrees with Judge Fogel's prior holding and finds the Ninth Circuit's case law dispositive on the point: even if the prior claims were the same, in light of *Yaqub*, the prior California mandamus action does not result in res judicata in this case.

### 3. Statute of Limitations

The statute of limitations for Section 1983 claims is the forum state's statute of limitations

---

[58] *Honey v. Distelrath*, 195 F.3d 531, 533 (9th Cir. 1999).

[59] Docket No. 18, Ex. B-1, 8.

[60] *Yaqub v. Salinas Valley Mem'l Healthcare Sys.*, C-02-02703-JF, 2005 WL 588555, at *5 (N.D. Cal. Mar 14, 2005).

[61] *Id.*

16

Case No.: CV 13-0577 PSG
ORDER

for personal injury actions.[62] California's two-year statute of limitations period for personal injury actions arising on or after January 1, 2003, is applicable in this case.[63] Federal law "determines when the state limitations period begins for a claim under 42 U.S.C. § 1983."[64] "A federal claim is generally considered to accrue when the plaintiff knows or has reason to know of the injury which is the basis of the action."[65] Plaintiffs may invoke the continuing violations doctrine to circumvent the two-year statute of limitations period by tying defendants' conduct beyond the two-year statute of limitations window to "a systematic policy or practice" of wrongdoing.[66]

Here, Defendants argue that factual allegations predating February 2011 are barred by the statute of limitations. Plaintiffs respond that Defendants have not shown that they knew or should have known that those actions were part of Defendants' violations through a pattern or practice of Plaintiffs' constitutional rights. Four of the events Defendants claim predate February 2011 have no dates in the complaint and so Defendants have not shown they are untimely. And as to allegations regarding events predating 2011 alluding to Teng's potential conflict of interest, Plaintiffs argue that those citations show that Teng had the conflict, not that Plaintiffs knew about the conflict or had notice of it. Plaintiffs also assert that, as a matter of law, they may rely on actions before the statute of limitations to allege a "systematic pattern or practice" amounting to a constitutional violation.

The parties' dispute centers around what exactly Plaintiffs are alleging – if Plaintiffs seek liability for discrete acts predating February 2011, they are out of luck. However, Plaintiffs' allegations claim an overall systemic problem. Thus, Plaintiffs may rely on allegations of conduct

---

[62] *McDougal v. Cnty. of Imperial*, 942 F.2d 668, 673 (9th Cir. 1991).

[63] Cal. Civ. Proc. Code § 335.1 (West 2003).

[64] *Norco Const., Inc. v. King Cnty.*, 801 F.2d 1143, 1145 (9th Cir. 1986).

[65] *Id.*

[66] *Gutowsky v. Cnty. of Placer*, 108 F.3d 256, 259 (9th Cir. 1997).

17
Case No.: CV 13-0577 PSG
ORDER

predating February 2011 to establish a pattern of misbehavior. The statute of limitations therefore does not apply.

### 4. Conflict of Interest Claims

Defendants suggest Plaintiffs attempted "to sue Teng under state and local law for alleged conflict of interest."[67] Defendants argue that Plaintiffs cannot bring such conflicts of interest claims against Teng under state law. Plaintiffs respond that they are not making such conflict of interest claims, but rather relying on the conflict of interest factual allegations to buttress their Section 1983 claims. Based on Plaintiffs' representations that they are merely supporting their due process and equal protection claims and are not independently pursuing state law causes of action in this litigation, the court holds dismissal is not warranted.

### 5. Teng's Liability for Punitive Damages

Defendants argue Teng cannot be liable for punitive damages in his official capacity.[68] Plaintiffs respond that they have sued him in both his official and personal capacity and therefore he can be liable for punitive damages as a private individual.[69] Defendants did not address the issue of Teng's liability for punitive damages in his personal capacity and thus have conceded the point.

### 6. Immunity

Defendants assert state immunity, which Plaintiffs respond is inapplicable to Section 1983 claims. Here, Plaintiffs have the high ground. In *Guillory v. Orange Cnty.*, the Ninth Circuit held

---

[67] Docket No. 17, 28.

[68] *Id.* at 30.

[69] Docket No. 22, 36. Although Plaintiffs' opposition does not cite case law to support its position, the case law does provide some support. *See Smith v. Wade*, 461 U.S. 30 (1983) (finding that individual public officers may be liable for punitive damages in a Section 1983 action).

18

Case No.: CV 13-0577 PSG
ORDER

that state statutory immunities do not apply to federal civil rights actions.[70] Thus, Defendants' assertion of state immunity must be rejected.

### 7. Abstention

In the Ninth Circuit, "abstention is required" if four requirements are met: state court proceedings must be (1) "ongoing," (2) "implicate important state interests," (3) "provide an adequate opportunity to raise federal questions," and (4) the federal court action must "enjoin the proceeding or have the practical effect of doing so."[71]

Plaintiffs assert that the parallel state court action does not meet the second or fourth elements. They assert that the constitutional violations do not implicate important state interests because they are not challenging the regulations, merely the enforcement of the regulations. Plaintiffs also assert that this court's judgment will not enjoin or threaten to enjoin the state court action. Because the state court proceeding was only directed towards the issuance of the cardroom permit amendment and landowner license and not relief for due process violations, the court agrees that abstention is not required in this case.

### 8. Motion to Strike

Defendants move the court to strike eleven portions of the complaint which they claim constitute allegations barred by the statute of limitations or res judicata. Plaintiffs respond that Rule 12(f) does not permit striking on the grounds that allegations are precluded as a matter of law.[72] In light of *Whittlestone* the court agrees with Plaintiffs and finds Defendants must rely on

---

[70] 731, F.2d 1379, 1382 (9th Cir. 1984).

[71] *Portrero Hills Landfill, Inc. v. Cnty. of Solano*, 657 F.3d 876, 882 (9th Cir. 2011) (internal quotations omitted).

[72] *See Whittlestone, Inc. v. Handi-Craft, Co.*, 618 F.3d 970, 971 (9th Cir. 2010) (holding that "Rule 12(f) of the Federal Rules of Civil Procedure does not authorize a district court to dismiss a claim . . . on the basis it is precluded as a matter of law").

19
Case No.: CV 13-0577 PSG
ORDER

their Rule 12(b)(6) motion to test the legal sufficiency of the complaint.[73]

## IV. CONCLUSION

The court GRANTS Defendants' motion to dismiss Plaintiffs' equal protection claim. The court GRANTS Defendants' motion to dismiss Plaintiffs Airport Fund and Airport Parkway from this litigation for lack of standing.

The court DENIES Defendants' motion to dismiss Plaintiffs' due process claim and DENIES Defendants' motion to dismiss Plaintiffs' evidence of Defendants' conflict of interest. The court DENIES Defendants' motion to dismiss Plaintiffs' claim for punitive damages. The court DENIES Defendants' motion to dismiss Plaintiffs' complaint on res judicata grounds, statute of limitations, and immunity grounds. The court DENIES Plaintiffs' abstention motion and related motion to stay the proceedings. The court DENIES Plaintiffs' motion to strike.

Because the court is not persuaded that amendment would be futile, the court further GRANTS Plaintiffs leave to amend their complaint in a manner consistent with this order. Any amended complaint shall be filed no later than September 30, 2013.

**IT IS SO ORDERED.**

Dated: September 5, 2013

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[73] *Id.* at 974 (identifying the defendant's Rule 12(f) motion as an attempt to have certain portions of the complaint dismissed and noting that such an argument was better suited for a Rule 12(b)(6) motion or a Rule 56 motion); *see also Yamamoto v. Omiya*, 564 F.2d 1319, 1327 (9th Cir.1977) ("Rule 12(f) is neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint.") (internal citations and quotations omitted).