**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| GARDEN CITY, INC., | ) | Case No.: 5:13-cv-00577-PSG |
| | ) | |
| Plaintiff, | ) | **ORDER RE: DEFENDANTS'** |
| | ) | **MOTION TO DISMISS AND MOTION** |
| v. | ) | **FOR PARTIAL SUMMARY** |
| | ) | **JUDGMENT** |
| CITY OF SAN JOSE, et. al., | ) | |
| | ) | **(Re: Docket Nos. 39 and 42)** |
| Defendants. | ) | |
| | ) | |

Before the court are Defendants City of San Jose, San Jose Police Department, and

Richard Teng's motion to dismiss and motion for partial summary judgment. Plaintiff Garden

City, Inc. (dba Casino M8trix) opposes. The parties appeared for a hearing. After considering the

arguments the court DENIES both motions, with one exception.[1]

---

[1] *See* Docket Nos. 39 and 42. Defendants also seek an express ruling that Garden City's punitive damages claim against Teng fails because 42 U.S.C. § 1983 precludes an award of punitive damages for persons sued in their official capacity. The court GRANTS this request but only IN-PART. *See Mosley v. Cnty. of Clark*, 996 F.2d 1226 (9th Cir. 1993) (officer defendants "are immune from suit for punitive damages under § 1983 for actions taken in their official capacity") (citing *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271 (1981)). Garden City may still seek punitive damages from Teng in his personal capacity.

1

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I. BACKGROUND

Readers unfamiliar with the background of the dispute are directed to court's prior order granting-in-part Defendants' first motion to dismiss or in the alternative abstain or stay the proceedings.[2]

# II. LEGAL STANDARDS

## A.      Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[3]   When a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[4]   A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[5]   Under Fed. R. Civ. P. 12(b)(6), "dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[6]   Dismissal with prejudice and without leave to amend is appropriate if it is clear that the complaint could not be saved by amendment.[7]

## B.      Summary Judgment

Summary judgment is appropriate only if there is "no genuine dispute as to any material

---

[2] *See* Docket No. 33.

[3] Fed. R. Civ. P. 8(a)(2).

[4] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[6] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[7] *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Case No.: 5:13-cv-00577-PSG
ORDER RE: DEFENDANTS' MOTION TO DISMISS AND MOTION FOR PARTIAL
SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

fact and the movant is entitled to judgment as a matter of law."[8]  The moving party bears the initial

burden of production by identifying those portions of the pleadings, discovery, and affidavits

which demonstrate the absence of a triable issue of material fact.[9]  If the moving party is the

defendant, he may do so in two ways: by proffering "affirmative evidence that negates an essential

element" of the nonmoving party's claim, or by demonstrating "the nonmoving party's evidence is

insufficient to establish an essential element of the nonmoving party's claim."[10]  If met by the

moving party, the burden of production then shifts to the non-moving party, who must then provide

specific facts showing a genuine issue of material fact for trial.[11]  The ultimate burden of

persuasion, however, remains on the moving party.[12]  In reviewing the record, the court must

construe the evidence and the inferences to be drawn from the underlying evidence in the light

most favorable to the nonmoving party.[13]

---

[8] Fed. R. Civ. P. 56(a).

[9] *See* Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[10] *Celotex*, 477 U.S. at 331.

[11] *See id.* at 330; *T.W. Elec. Service, Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) ("Rule 56 provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" (*quoting* Fed. R. Civ. P. 56(c)).

[12] *Celotex*, 477 U.S. at 330 (the "ultimate burden of persuasion" always "remains on the moving party").

[13] *See Anderson v. Liberty Lobby, Inc.,*, 477 U.S. 242, 248 (1986) (noting that "all evidence must be construed in the light most favorable to the party opposing summary judgment"); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (On "summary judgment the inferences to be drawn from the underlying facts" must "be viewed in the light most favorable to the party opposing the motion." (citations and quotations omitted)).

Case No.: 5:13-cv-00577-PSG
ORDER RE: DEFENDANTS' MOTION TO DISMISS AND MOTION FOR PARTIAL SUMMARY JUDGMENT

### III. DISCUSSION

#### A.      Motion to Dismiss

Defendants seek dismissal of Garden City's class-of-one equal protection claim[14] because "Plaintiff cannot get away from the fact that the alleged different treatment arose in the context of the permitting process to move Garden City's business to the new high-rise location.  Because Bay 101 was not moving" to a new high-rise location with proposed gaming on the eighth floor, Garden City "does not and cannot allege sufficient facts to establish that it is similarly situated with Bay 101."[15]  Defendants also urge the court to take note of another key distinction between Garden City and Bay 101: Garden City was purchased out of bankruptcy in 2007 and thus had new owners who did not have a long track record with the gaming division when they sought licenses related to their move.  As persuasive authority Defendants cite *Scocca v. Smith*, a case involving the denial of a permit to carry a concealed gun.[16]  In that case the court noted that thin allegations that two parties are similar situated "are especially problematic where, e.g., 'inherently subjective and individualized enforcement of health and safety regulations'" are at issue.[17]

Garden City responds that the amended complaint spells out the similarities running between the two casinos at length.  Its opposition draws these out:

- Casino M8trix and Bay 101 "are the only permitted cardrooms in San Jose and exist under, and are required by law to operate under, the unique provisions of California and San Jose law regarding gaming."

---

[14] An "equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called class of one." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (internal quotations and citations omitted).  A class-of-one equal protection claim under the Fourteenth Amendment lies where the plaintiff was (1) intentionally, (2) treated differently than others similarly-situated, and (3) there is no rational basis for the difference in treatment. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

[15] Docket No. 39 at 2.

[16] Case No.: 3:11-cv-01318-EMC, 2012 WL 2375203 (N.D. Cal. June 22, 2012).

[17] *Id.* at *5 (*quoting Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1220 (10th Cir. 2011)).

4

United States District Court
For the Northern District of California

- As "cardrooms, Casino M8trix and Bay 101 are both limited in the type of gaming permitted: various types of poker, and California and Asian card games."

- Under "the California laws and regulations for cardrooms, the card games at both Casino M8trix and Bay 101 involve only the players directly competing against each other, without a 'house.'"

- "Both cardrooms provide player-dealers that deal the cards, and the cardrooms charge a fixed fee per hand to play at the tables, but the cardrooms have no interest in the outcome of the games."

- Both "Casino M8trix and Bay 101 operate 49 gaming tables, the maximum amount permitted in San Jose."[18]

Garden City's opposition also details its key allegations of disparate treatment:

- Although Casino M8trix was required to share its proprietary software (and train the gaming division on how to use it) that monitors employee scheduling, staffing, and performance information in real-time, Bay 101 was not subject to a similar requirement with respect to its proprietary software that tracks gaming data at its casino.[19]

- Casino M8trix was required to disclose and offer to its competitor a patented new baccarat game with Bay 101. Bay 101 faced no such requirement.[20]

- Casino M8trix was subject to heightened security requirements from the division that were not imposed on Bay 101. For example, Casino M8trix was required to submit dozens of hours of video footage and provide the division with remote access to Casino M8trix's surveillance system even though the division's remote surveillance facility was not equipped to stream the feed. According to the complaint, no similar demands were levied upon Bay 101 despite similar security requirements.[21]

- Casino M8trix was targeted by the San Jose Police Department, perhaps, because of its ongoing dispute with the gaming division. The complaint notes a spike in police "calls for service" related to parking violations or expired registrations at Casino M8trix from zero to eighty the following year. In contrast, the division reported only two such calls at Bay 101.[22]

On balance, the court is satisfied that Garden City has proffered enough facts to state a

claim that Garden City and Bay 101 are similarly situated. This is hardly a situation like that in

---

[18] Docket No. 57 at 2-3 (citing Docket No. 38). The complaint also points out the two casinos are geographically proximate, have bars, serve food, employ proprietary software systems related to gaming operations, and face similar levels of crime. *See* Docket No. 38 at ¶¶ 53, 54, 55, 57, 65, and 70.

[19] *See id.* at 3-4 (citing Docket No. 38 at ¶¶ 56-57).

[20] *See id.* at 4-5(citing Docket No. 38 at ¶ 58).

[21] *See id.* at 5-6 (citing Docket No. 38 ¶¶ 59-63).

[22] *See id.* at 6 (citing Docket No. 38 ¶¶ 67-68).

5

Case No.: 5:13-cv-00577-PSG
ORDER RE: DEFENDANTS' MOTION TO DISMISS AND MOTION FOR PARTIAL
SUMMARY JUDGMENT

*Scocca*, where the plaintiff offered nothing more than a conclusory statement that he was similarly situated with his comparators.[23]  Garden City has alleged a dozen or more characteristics that it and Bay 101 share.  While Defendants are quite right that the two entities are different in a number of other ways (e.g., only Garden City sought an amendment to add eighth-floor gaming at a new location and only Garden City had new owners without experience in cardroom gaming in San Jose), it is plausible, as the Supreme Court put it in *Iqbal*, that these differences are immaterial.[24]  In sum, whatever doubts the court may presently have about Garden City's claim, those doubts cannot substitute for a proper weighing of the claim after appropriate discovery has been completed.

**B.     Summary Judgment**

In considering Defendants' initial objections to Garden City's due process claim lodged in its first motion to dismiss,[25] the court identified the nub of the claim as centering "on the degree to which the police chief and the division administrator have any discretion to withhold the permit amendment."[26]  The court noted that pursuant to Title 16 of the San Jose Municipal Code the police chief "shall permit" permit amendment to Garden City's gaming license unless the chief

---

[23] 2012 WL 2375203, at *2 (describing plaintiff's bare allegations that his good moral character and good cause as "functionally equivalent" to that of seventy others).

[24] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"); *see also Cypher v. California Univ. of Pennsylvania*, 914 F. Supp. 2d 666, 667 (W.D. Pa. 2012) (*quoting Sims v. Court of Common Pleas of Allegheny County*, Case No.: 10-cv-151, 2010 WL 3896428, at *4 (W.D. Pa. Sept. 30, 2010)) (The "'question of whether other employees are similarly situated is fact-intensive' and a plaintiff who has stated a plausible claim for relief should be 'entitled to engage in discovery as to whether the alleged comparators are, in fact, similarly situated.'")).

[25] *See* Docket No. 33 at 7.

[26] *Id.*

Case No.: 5:13-cv-00577-PSG
ORDER RE: DEFENDANTS' MOTION TO DISMISS AND MOTION FOR PARTIAL
SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

finds the proposed amendment will have one of four detrimental effects.[27]  The court concluded

that because the chief was alleged to "have never made one of those four findings based on an

established factual record, the chief was required to issue the cardroom permit amendment.  No

discretion was permitted."[28]

Defendants now move for summary judgment on Garden City's due process claim because

Garden City has not submitted evidence sufficient to establish a constitutionally protected right.

First, the claim "is based only on the application to amend Casino M8trix's cardroom permit to

allow gaming on the 8th floor and Plaintiffs allege no facts to establish a reasonable expectation

that the application" would be granted.[29]  Second, "the decision to issue a cardroom permit, or to

amend one, is a discretionary act that, ultimately depends on determinations based on the judgment

of the City's Police Chief."[30]  Because Garden City's first claim is based exclusively on its

allegedly vested property interest in a cardroom amendment permit and the uncontroverted,

detailed decision by Chief Moore establishes that it did not have a right to that amendment,[31]

Defendants urge, summary judgment is warranted.

Garden City disputes that its entire due process claim solely alleges that it was entitled to an

amendment to its cardroom permit to allow eighth-floor gaming.  Garden City notes that its due

---

[27] *Id.* (citing Section 16.30.230(b) of the Gaming Ordinance ("The chief of police *shall permit* the amendment if the chief determines and finds that the proposed amendment will not:

  (1) Have an adverse effect on public health, safety, or welfare; or
  (2) Have an adverse effect on the ability of the administrator and the chief of police to effectively administer and enforce the requirements and policies of this title; or
  (3) Result in the violation of any city, state, or federal law; or
  (4) Be inconsistent with the policies, purposes, and provisions of this title or be contrary to the public interest.").

[28] *Id.*

[29] Docket No. 42 at 9.

[30] *Id.*

[31] *See* Docket No. 48.

7

Case No.: 5:13-cv-00577-PSG
ORDER RE: DEFENDANTS' MOTION TO DISMISS AND MOTION FOR PARTIAL
SUMMARY JUDGMENT

process claim alleges a pattern of regulatory harassment of which the denial of the permit amendment represents a key portion of that claim. Garden City also contests whether Chief Moore made one of the four required findings on the basis of an established factual record. As Garden City sees it, the Chief's decision merely accepted and adopted Administrator Teng's tainted report and recommendation without engaging substantively with the merits of his report. It is insufficient – from Garden City's perspective – that the Chief recited language from Section 16.30.230(b) without delineating how he arrived there. At bottom, Garden City argues, the city cannot escape responsibility by adopting Teng's corrupt findings simply because Chief Moore rubber-stamped them.

Without providing Garden City with at least some opportunity for discovery on this claim, summary judgment is not warranted. Even if Garden City's claim is limited to its amendment application, a factual dispute exists as to whether or not the Chief sufficiently found the amendment would have one of the four detrimental effects on the basis of an established factual record. Summary judgment may be appropriate after an appropriate record has been developed on this and other genuine issues, but not before.

No later than seven days from this order, the parties shall submit a proposed scheduling order.

**IT IS SO ORDERED.**

Dated: January 8, 2014

_____
PAUL S. GREWAL
United States Magistrate Judge

8

Case No.: 5:13-cv-00577-PSG
ORDER RE: DEFENDANTS' MOTION TO DISMISS AND MOTION FOR PARTIAL
SUMMARY JUDGMENT